Thomas J. WOZNICKI, Plaintiff-Appellant,

v.

Dennis W. ERICKSON, Assistant District Attorney,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 94–2795. Oral argument January 10, 1996.—Decided
June 25, 1996.*

(Also reported in 549 N.W.2d 699.)

178

For the defendant-respondent-petitioner the cause was argued by *Alan Lee*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the plaintiff-appellant there was a brief by *Melissa A. Cherney, Chris Galinat* and *Wisconsin Education Association Council*, Madison and oral argument by *Melissa A. Cherney*.

Amicus curiae brief was filed by *Jeffrey J. Kassel* and *LaFollette & Sinykin*, Madison for the Wisconsin Newspaper Association and Wisconsin Freedom of Information Council.

WILLIAM A. BABLITCH, J. Dennis W. Erickson, an Assistant District Attorney for St. Croix County (District Attorney), seeks review of a published decision of the court of appeals holding that public employee personnel records are exempted from the open records law. The court of appeals further held that Thomas J. Woznicki's (Woznicki) private telephone records, which are being held by the District Attorney, are not public records within the meaning of the open records law. We conclude that the open records law does not provide a blanket exemption for public employee personnel records or Woznicki's telephone records. These records are, therefore, open to the public unless there is an overriding public interest in keeping the records confidential. We further recognize the reputational and privacy interests that are inherent in such records, and hold that because of special public policy reasons that are raised when a district attorney chooses to release materials gathered during the course of a criminal investigation, the district attorney's decision to release these records is subject to de novo review by the circuit court. Accordingly, we reverse the court of appeals.

The facts are undisputed. In April 1994, Woznicki was charged with having consensual sex with a minor over the age of sixteen in violation of Wis. Stat. § 948.09 (1993-94).[1] A criminal investigation ensued,

---

[1] All future statutory references are to the 1993-94 volume unless otherwise indicated.

during which the St. Croix County District Attorney's office subpoenaed Woznicki's complete personnel file from his employer, the New Richmond School District, and Woznicki's personal telephone records.

In July 1994, the District Attorney dismissed the case against Woznicki. Subsequently, Woznicki moved the circuit court for an order prohibiting the District Attorney from releasing his personnel and telephone records. The circuit court denied this motion based on the premise that as custodian of the records, the District Attorney had sole discretion to decide whether to release them.

The District Attorney notified Woznicki that there had been two requests for his file. One of the requests was from Woznicki's employer and the other request was from the father of the complainant. The District Attorney informed Woznicki that he intended to release the records to the two requesters.

Consequently, Woznicki moved the circuit court for a temporary injunction prohibiting the District Attorney from releasing his personnel and telephone records. The circuit court denied the motion for a temporary injunction, but ordered that if Woznicki filed an appeal, the District Attorney would be enjoined from releasing the records until the issue was resolved. Woznicki appealed the circuit court's decision denying his motion for a temporary injunction.

The court of appeals interpreted the open records law to restrict public access to personnel records of public employees. The court created a categorical exemption from disclosure for all public employee personnel records. The decision of the court of appeals also narrowed the definition of a "record" subject to the open records law by excluding Woznicki's telephone records in the custody of the District Attorney, reasoning that

182

they were private records created by a private entity. The court of appeals therefore reversed the circuit court's order and remanded the matter with directions to grant Woznicki's motion for an injunction prohibiting the District Attorney from disclosing Woznicki's personnel and telephone records. The District Attorney now seeks review.

■

The case presents the following issues. First, whether personnel records are exempt from disclosure under the open records law. Second, whether Woznicki's telephone records are exempt from disclosure under the open records law. Third, if either or both are not exempt, whether the District Attorney's decision to release them is subject to judicial review. The application of a statute to an undisputed set of facts presents a question of law which we review de novo. *Village of Butler v. Cohen*, 163 Wis. 2d 819, 825, 472 N.W. 2d 579 (Ct. App. 1991).

■

The first issue is easily answered. In *Wisconsin Newspress, Inc. v. School Dist. of Sheboygan Falls*, 199 Wis. 2d 769, 546 N.W.2d 143 (1996), this court held that no blanket exception exists under the open records law for public employee disciplinary or personnel records. *Id.* at 769. Instead, "the balancing test must be applied in every case in order to determine whether a particular record should be released, and there are not blanket exceptions other than those provided by the common law or statute." *Id.* at 781. For the reasons articulated in *Newspress*, we conclude that Woznicki's personnel records are not exempt from disclosure under the public records law. They are subject to the balancing test to determine whether permitting inspection would result in harm to the public interest which

183

outweighs the legislative policy recognizing the public interest in allowing inspection. *Breier*, 89 Wis. 2d at 427.

■

The second issue is whether Woznicki's telephone records are exempt from the open records law. Despite the private nature of Woznicki's telephone bills, the telephone records in this case fall within the statutory definition of a public record. Wisconsin Stat. § 19.32(2) defines "records" as "any material on which . . . information is recorded or preserved . . . [or] created or is being kept by an authority." Wisconsin Stat. § 19.32(1) defines "authority" as a "state or local office, elected official, agency [or] board" who has "custody of a record." There is no question that the District Attorney constitutes a proper authority under the clear meaning of the statute. Therefore, Woznicki's telephone records are not exempt from the open records law when they are held by the District Attorney. The records are subject to the balancing test as stated above.

Having decided that Woznicki's personnel and telephone records are not exempt from the open records law, we address the final issue: whether the District Attorney's decision to release them is subject to judicial review.

The District Attorney argues that the law does not provide a cause of action for anyone seeking to deny access to his or her records, only for one seeking to compel disclosure. If an authority refuses to release a record, the requester may seek a writ of mandamus to compel release under Wis. Stat. § 19.37(1).[2] The Dis-

---

[2] Wis. Stat. § 19.37(1) states:

(1) Mandamus. If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after

trict Attorney asserts that there is no parallel action through which an individual may seek to compel the custodian to deny access to public records.

We agree with the District Attorney that the open records law does not explicitly provide a remedy for an individual in Woznicki's position. Yet a review of our statutes and case law persuades us that a remedy, i.e., de novo review by the circuit court, is implicit in our law. The statutes and case law have consistently recognized the legitimacy of the interests of citizens to privacy and the protection of their reputations. Woznicki's interests in privacy and reputation would be meaningless unless the District Attorney's decision to release the records is reviewable by a circuit court. The fact that the open records law does not create a separate cause of action does not mean that Woznicki is without redress. For the reasons stated below, we conclude that the District Attorney's decision to release Woznicki's records is subject to de novo review by the circuit court.

Several sections of the Wisconsin statutes evince a specific legislative intent to protect privacy and reputation. There is a general right to privacy under Wis. Stat. § 895.50.[3] The open records law recognizes that the exceptions to the companion open meetings law are

---

a written request for disclosure is made, the requester may pursue either, or both, of the alternatives under pars. (a) and (b).

> (a) The requester may bring an action for mandamus asking a court to order release of the record. The court may permit the parties or their attorneys to have access to the requested record under restrictions or protective orders as the court deems appropriate.

[3] Wis. Stat. § 895.50(1) states, in part:

The right of privacy is recognized in this state. One whose privacy is unreasonably invaded is entitled to the following relief[.]

indicative of public policy on the issue of the disclosure of public employee personnel files. *See* Wis. Stat. § 19.35(1)(a). Wisconsin Stat. § 19.85(1) provides that governmental meetings may be closed for certain purposes involving privacy and reputational concerns:

**19.85  Exemptions. (1)** . . . A closed session may be held for any of the following purposes:

. . .

(b)  Considering dismissal, demotion, licensing or discipline of any public employe or person licensed by a board or commission or the investigation of charges against such person, or considering the grant or denial of tenure for a university faculty member, and the taking of formal action on any such matter; . . . .

. . .

(c)  Considering employment, promotion, compensation or performance evaluation data of any public employe over which the governmental body has jurisdiction or exercises responsibility.

. . .

(f)  Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations.

It is significant to note that Wisconsin Stat. § 103.13(6)[4] gives employees limited rights to view

[4] Wis. Stat. § 103.13(6) states, in relevant part:

their own employment file. The employee's representative can view the file only with the written permission of the employee. *See* § 103.13(3). Section 103.13 is a strong legislative pronouncement that privacy and reputational interests are deserving of protection. We also note that Wis. Stat. § 230.13(1)(c) permits a state secretary or administrator to keep personnel records closed to the public when they involve disciplinary actions of employees.

Together, the above-referenced statutes evince a clear recognition of the importance the legislature puts on privacy and reputational interests of Wisconsin citizens.

Our case law has consistently recognized a public policy interest in protecting the personal privacy and reputations of citizens. In *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 137 N.W.2d 470 (1965), we stated that documents which would unduly damage a reputation should not be released. "We determine that this legislative policy of not disclosing data which may unduly damage reputations carries over to the field of inspection of public records . . . ." *Id.* at 685.

In *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 279 N.W. 2d 179 (1979), this court cited *Youmans* and held that there is a public policy interest in the protection of the reputations of individuals. *Id.* at 430. In *Breier*, a newspaper sought access to the initial charges of people arrested. The chief of police conceded that the daily

---

**(6)** Exceptions. The right of the employe or the employe's designated representative under sub. (3) to inspect his or her personnel records does not apply to:

. . .

> (e) Information of a personal nature about a person other than the employe if disclosure of the information would constitute a clearly unwarranted invasion of the other person's privacy.

arrest record was a public record. This court allowed access to the records, but also stated that the chief of police,

> asserted a legitimate concern for the rights of individuals in their reputations which must be recognized by this court. This legitimate concern for the reputations of citizens is a matter of public interest and must be weighed against the interest of the public in having the records open.

*Id.* at 433. Justice Coffey, in his dissent in *Breier*, made an important point:

> [T]he damage to the person arrested through disclosure and publication is irreparable. If any balancing were to be done between the reputational interest of the individual and the newspaper's right to have this piece of gossip gift wrapped for publication, there is no doubt that the scales of justice would weigh heavily on the side of the individual.

*Id.* at 442.

In *Village of Butler v. Cohen*, 163 Wis. 2d 819, 472 N.W. 2d 579 (Ct. App. 1991), the court of appeals held that the personnel records of village police officers in that case were not subject to disclosure under the public records law. Public policy interests favoring nondisclosure outweighed the general presumption that the records should be open to the public. *Id.* at 829-30. These public policy interests included the protection of privacy and reputational interests, potential inhibition of candid assessments of employees in personnel records, and protection of reputations of individual police officers. *Id.* at 828.

188

Furthermore, the supreme court has recognized that protecting the reputations of individuals is a public policy interest . . . .

. . .

Likewise, sec. 103.13, Stats., is indicative of our state's public policy of protecting an individual's privacy and reputational interests even to the extent that certain employee matters may be closed to inspection to the employee himself or herself. Section 103.13(6).

*Id.* at 830-31. The court of appeals in *Butler* relied on the fact that, although the case was not governed by a "clear statutory exception," our legislature repeatedly has recognized a public policy interest in limiting access to personnel files of public employees. *Id.* at 829.

In *Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 516 N.W.2d 357 (1994), this court again recognized the importance of an individual's privacy and reputational interests. In *Armada*, a broadcaster brought an action under the open records law for a writ of mandamus to compel a school district to allow access to sexual harassment and grievance reports against the school district. The subject of the record's request, Schauf, sought to intervene in the action. This court held that Schauf had "a unique and significant interest in attempting to persuade the court that this report should remain closed." *Id.* at 474. We stated that:

Schauf has a general right to privacy under Wisconsin law. *See* sec. 895.50, Stats. Further, several sections of the Wisconsin statutes evince a specific legislative policy of protecting privacy and confidentiality in employee disciplinary actions.

. . .

We have also recognized that there is a public-policy interest in protecting the reputations of citi-

189

zens. *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 430, 279 N.W.2d 179 (1979) . . . . This heightened significance given to privacy and reputation leads us to conclude that Schauf's interest in keeping the Weiland report closed is sufficient to satisfy sec. 803.09(1), Stats.

*Id.* at 474-75.

The District Attorney correctly points out that *Armada* did not specifically reach the question of whether or not a record should be closed or whether Schauf had the right to close it. However, in concluding that Schauf did have a right to intervene, we recognized that an individual who is the subject of a record request has protectable privacy and reputational interests.

In *Armada*, the legal custodian agreed with Schauf that the records should not be disclosed. Nonetheless, because we recognized that Schauf's interests were distinct from, and possibly adverse to, the custodian, we allowed him to intervene. *Id.* at 476. We stated:

The . . . report contains speculative and uncorroborated information about Schauf which could cause great harm to Schauf's reputation and future career as a school teacher. Consequently, Schauf has a unique and significant interest in attempting to persuade the court that this report should remain closed.

*Id.* at 474.

Woznicki's interests are even more compelling than those of Schauf in *Armada*. Here, the District Attorney takes the position that he will release the records. Unless Woznicki is allowed some review of the District Attorney's decision, he is without recourse in

190

protecting his asserted privacy and reputational interests.

Like Schauf, Woznicki has a unique and significant interest in attempting to persuade a court that his personnel and telephone records should remain closed. Woznicki may well present arguments to the court that the District Attorney, being the secondary custodian of the records, did not even consider. In fact, there is some question as to whether the District Attorney properly considered all the competing public interests in this case, or at the very least, whether he considered arguments put forth by Woznicki. In an exchange with the circuit court, the District Attorney stated:

> But I don't think there's any case law that says before a custodian of records can release the contents of its file it must satisfy some particular private person that it has balanced these factors to that person's satisfaction or that person's view of— of the public interests involved.
>
> . . .
>
> I don't think there's any basis or any authority for the Court ordering that the District Attorney now has to somehow at some point before somebody articulate his or her view of the public interest and balancing factors before exercising his or her discretion . . . .

Regardless of what the District Attorney did or did not do, it is the duty of the custodian of public records, prior to their release, to consider all the relevant factors in balancing the public interest and the private interests. In *Breier*, we set forth the procedure a custodian must follow when an open records request is made:

In the first instance, when a demand to inspect public records is made, the custodian of the records must weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection.

*Breier*, 89 Wis. 2d at 427.

The duty of the District Attorney is to balance all relevant interests. Should the District Attorney choose to release records after the balancing has been done, that decision may be appealed to the circuit court, who in turn must decide whether permitting inspection would result in harm to the public interest which outweighs the public interest in allowing inspection. Whether harm to the public interest from inspection outweighs the public interest in inspection is a question of law. *Id.* Our courts have repeatedly held that the balancing of the public interests for and against disclosure is a question of law to be reviewed by a court de novo. *Village of Butler*, 163 Wis. 2d at 823; *Wisconsin State Journal v. UW-Platteville*, 160 Wis. 2d 31, 40, 465 N.W.2d 266 (Ct. App. 1990); *Breier*, 89 Wis. 2d at 427. Although our previous cases have always involved a court's review of a custodian's denial of a records request, this does not change the fact that a custodian's balancing of interests for and against disclosure is a question of law for which a court can substitute its judgment.[5]

---

[5] Support for our conclusion can be found in *United States v. Gerena*, 869 F.2d 82 (2d Cir. 1989), in which the Second Circuit Court of Appeals addressed a similar issue: whether prosecutors could publicly disclose materials obtained through electronic surveillance when such disclosure would harm the

Because we conclude that an individual whose privacy or reputational interests are implicated by the district attorney's potential release of his or her records has a right to have the circuit court review the District Attorney's decision to release the records, it necessarily follows that the District Attorney cannot release the records without first notifying that individual and allowing a reasonable amount of time for the individual to appeal the decision. In this case, the District Attorney properly gave notice to Woznicki that two requests had been made for his file.

We agree with the policy and purpose underlying the open records law: to provide the broadest possible

privacy interests of those involved. Although *Gerena* dealt with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. ("Title III"), we find the case analogous in several respects to the case we deal with today.

*Gerena* recognized that there was a problem when the "government [is] the sole arbiter of what should be publicly disclosed, since once a paper is publicly filed, the damage is done." *Id.* at 85. We agree. In the present case, as soon as the District Attorney releases Woznicki's personnel and telephone records, the damage to his privacy and reputational interests is done. Just like our public records statute, Title III did not address this question. The *Gerena* court concluded that it was the district court's responsibility to balance the privacy interests of the individual against the public interests in disclosure. *Id.* at 85. We too leave the balancing of public and private interests to the circuit courts. The *Gerena* court also concluded that when the government publicly discloses documents, "the government must give defendants notice and the opportunity to object." *Gerena*, 869 F.2d at 86. So too in the present case, Woznicki has a right to notice and the right to be heard in court of law. *See also In re The New York Times Co.*, 828 F.2d 110 (2d Cir. 1987).

193

access of the public to public records. However, the right to public access is not absolute. In this case, Woznicki has important interests in privacy and reputation that warrant protection under our law.

There are special public policy concerns that are raised when a district attorney chooses to release materials gathered during the course of a criminal investigation. In *State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 433-34, 477 N.W.2d 608 (1991), this court concluded that "the common law provides an exception which protects the district attorney's files from being open to public inspection." Recently, in *Nichols v. Bennett*, 199 Wis. 2d 268, 275 n.4, 544 N.W.2d 428 (1996), we affirmed the *Foust* exemption from the open records law for documents that, by their nature, are "integral to the criminal investigation and prosecution process."

Although a district attorney does not have to release documents gathered in the course of a criminal investigation, if he or she decides to do so, the subjects of those investigative documents should have a right to notice of and to object to that pending disclosure. We articulated in *Foust*, and reaffirmed in *Nichols*, public policy reasons that support nondisclosure of prosecutorial case files, such as encouraging public cooperation in investigations by ensuring informant anonymity. Additionally, material gathered by prosecutors is sometimes highly personal and private and can include medical, psychiatric and psychological reports, as well as victims' statements.

The *Foust* exception to the open records law rests on the implicit recognition that district attorneys are different from other public officials in that they are able to exercise extraordinary police powers to obtain records which they did not create and for which they are not the primary custodians. Given the broad discre-

194

tion afforded to district attorneys in gathering information during investigations and the common law exemption prohibiting forced disclosure of such materials, it is just and reasonable that persons whose privacy and reputational interests will be impacted by a decision in favor of disclosure be given notice and be allowed to appeal.

For the reasons stated above, we conclude that the open records law does not provide a blanket exemption for either Woznicki's personnel records or his telephone records. These records are open to the public unless there is an overriding public interest in keeping the records confidential. We further recognize the reputational and privacy interests that are inherent in Woznicki's records, and hold that the District Attorney's decision to release these records is subject to de novo review by the circuit court. Accordingly, we reverse the court of appeals and remand the case to the circuit court to determine if the District Attorney, in deciding that the records were to be released, conducted the appropriate balancing test in reaching that decision, and, if so, to review de novo the decision of the District Attorney.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.

WILLIAM A. BABLITCH, J. (*concurring*). I write to answer the dissent.

Privacy and reputation are precious commodities. This case involves a private citizen whose privacy is about to be invaded and his reputation about to be potentially damaged by a district attorney's unilateral

decision to release his personnel and telephone records. This citizen wants to be heard, and he wants a judge to review the district attorney's decision before the release. The dissent would deny him the right to be heard and the right of review. The dissent would allow the district attorney the unilateral, unchecked authority to release these records. Privacy and reputation are far too valuable to leave this private citizen unheard and unprotected. Common criminals, under our system of justice, are afforded more.

The majority's conclusion that such rights are available is not only consistent with prior Wisconsin case law and statutory enactments, it is consistent with fundamental notions of justice and fairness. Although the decision is not grounded on due process considerations, they are well heeded. The root requirement of the Due Process Clause of the Fourteenth Amendment is " 'that an individual be given an opportunity for a hearing *before* he [or she] is deprived of any significant protected interest.' " *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985) (footnote omitted). The government must provide notice and some kind of hearing before it can lawfully deprive anyone of life, liberty, or property. By requiring the government to follow appropriate procedures, the Due Process Clause promotes fairness in such decisions. *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

In his classic statement, Justice Brandeis characterized "the right to be let alone . . ." as the most comprehensive of rights and the right most valued by a civilized society. *See Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting). In *Wisconsin v. Constantineau*, 400 U.S. 433, 434 (1971), the U.S. Supreme Court held that a protectable liberty interest is implicated "[w]here a person's good name,

reputation, honor, or integrity is at stake because of what the government is doing to him . . . ." *Id.* at 437.

The dissent expresses well and capably the legal conclusion to which it believes the law inexorably draws it. It is a position for which a legal argument can be made. But it has one major flaw. It is a cold legal analysis which does not touch real life. We are not talking here about government contracts, minutes of some town board meeting, or the like. We are talking about a private citizen's concern that his reputation and privacy will be damaged, perhaps irreparably, by the release of his personnel and private telephone records.[1]

The words "public record" are sterile, faceless, bloodless words, but at times conceal within them the

---

[1] One commentator describes the problem as follows:

Problems arise as a result of the collection of personal data, however, because individuals often have little control over its dissemination. Over time, information may easily become misinformation because individuals cannot control, and thus cannot correct, the information that is disseminated. Moreover, personal facts which do not become distorted may be of such a highly sensitive and personal nature that, although correct, they are potentially harmful and embarrassing if disseminated carelessly. Individuals must be protected from such unwarranted personal intrusions. The government, although a logical source of protection from violations of personal privacy, is probably the greatest information collector and does not always vigilantly protect personal privacy. In order for the government to act efficiently, it must have certain information about its citizens. The government, however, should also protect each individual's privacy interests. The inherent conflict between the government as "collector" and the government as "protector" casts doubt on the efficacy of relying on state and federal legislatures to protect individuals' interest in informational privacy.

Francis S. Chlapowski, *The Constitutional Protection of Informational Privacy*, Note, 71 B.U. L. Rev. 133, 133-34 (1991) (footnotes omitted).

197

lives of real people, and contain the potential for untold damage to privacy and reputation.[2] Public records in the hands of the district attorney, a secondary rather than a primary custodian of those records, may contain uncorroborated or untrue hearsay, raw personal data, or a myriad of accusations, vendettas, or gossip. Much if not all of this data may serve only to titillate rather than inform.

Once released, this data can be quoted with impunity. A titillated society quickly moves on to the next headline; the revealed person carries the consequences forever.

Our society consistently expresses great concern for victims of crime. Is not a private citizen whose reputation is about to be shredded, or whose privacy about to be ripped open to public view, potentially as great a victim? Are we to say that a district attorney in the process of daily business will never make a mistake in the release of "public records?" The damage, once done, cannot be undone. And the damage can be monumental. Shakespeare had it right: "He who steals my purse steals trash; . . . But he that filches from me my good name . . . makes me poor indeed."

Surely the potential victim ought to have a right to be heard and a right of review by a neutral and detached judge when there is so much at stake.

The dissent speaks of delay. A few days delay is a small price to pay for such important interests. Inap-

---

[2] A 1990 Harris survey states that "seventy-nine percent of Americans are 'concerned about threats to their personal privacy.' Nearly seventy-five percent believe 'they have lost all control over how personal information about them is circulated and used by companies.' " Carol R. Williams, *A Proposal for Protecting Privacy During the Information Age*, 11 Alaska L. Rev. 119, 119-20 (1994) (footnotes omitted).

propriate delay, or special circumstances requiring expeditious decisions, can be dealt with quickly and summarily by the courts.

Privacy and reputation, once lost, are rarely retrieved. They deserve, at the very least, the protection afforded by the right to be heard and the right to judicial review. Justice and fairness demand no less.

SHIRLEY S. ABRAHAMSON, J. (*concurring in part, dissenting in part*). Thomas J. Woznicki, an employee of the New Richmond School District, was charged with having consensual sex with a minor. The District Attorney dismissed the criminal case because he concluded he could not meet the burden of proving guilt beyond a reasonable doubt. Relying on the open records law, the father of the minor and the New Richmond School District sought release of Woznicki's personnel records (which had apparently been compiled by the District) and Woznicki's telephone records, both of which had been subpoenaed by the District Attorney in his investigation. The District Attorney's task was to assess whether the documents in question should be disclosed under Wisconsin's open record law.

I agree with the majority opinion that neither personnel records nor telephone records are categorically exempt from disclosure under Wisconsin's open records law, and I join that portion of the majority opinion which so holds. Just about three months ago this court held that the records of a school district involving a disciplinary action against a school district administrator were not exempt from the open records law and could therefore be released if the custodian of the record determined that disclosure was merited under

the open records law.[1] As the majority correctly observes, access to these records is determined by the record custodian through a case-by-case balancing of the public's right to inspect public records under the open records law and any potential harm to the public interest that might result from disclosure. *State ex. rel. Youmans v. Owens*, 28 Wis. 2d 672, 681-82, 137 N.W.2d 470 (1965).

I dissent from the remand to the circuit court for a determination of whether the custodian erred in deciding to open the personnel and telephone records at issue in this case. Today for the first time the court's decision requires a custodian to notify all persons whose reputational and privacy interests might be "implicated" by the release of a record. Today for the first time the court's ruling subjects a custodian's decision to release such records to judicial review. I conclude that for a number of reasons neither of these newly adopted rules is justified or warranted by Wisconsin's open records law.

First, the majority silently overturns precedent by granting a noncustodian the power to determine whether public records should be closed. Our prior cases recognize that only a legal custodian has the power to close records subject to judicial review.

Second, the majority's decision contravenes the language, spirit and purpose of the open records law, which states explicitly that "[e]xcept as otherwise provided by law, any requester has a right to inspect any record." Wis. Stat. § 19.35(1)(a) (1993-94).[2] Nothing in the case law, the open records law or any other statute

---

[1] *Wisconsin Newspress, Inc. v. Sheboygan Falls Sch. Dist.*, 199 Wis. 2d 769, 777, 546 N.W.2d 143 (1996).

[2] All further statutory references are to the 1993-94 volume of the Wisconsin Statutes.

supports the majority's novel requirements of notification and subsequent judicial review when a custodian decides to release records implicating privacy and reputational interests. This court should not rewrite the open records statute. If the open records law is to provide that a court may assess privacy and reputational interests after the custodian has decided to open the records, this significant change in the open records statute should be left to the legislature.

Third, the majority's broad and undefined invocation of "privacy and reputational interests" intrinsic to documents such as personnel records and telephone records could foreshadow a dramatic erosion of the open records law. Although its holding is ostensibly limited to records held by a district attorney, majority op. at 181, the reasoning of the majority opinion is directed to the custodians of all records rather than to a district attorney, the custodian in this case. *See, e.g.*, majority op. at 185-92. The majority opinion's reasoning with regard to privacy and reputational interests would apply if, for example, the records in this case were in the possession of the school district rather than the district attorney. The location of the records should not be the determinative factor in applying the open records law. As the court explained in *Nichols v. Bennett*, 199 Wis. 2d 268, 274-75, 544 N.W.2d 428 (1996), "[i]t is the nature of the documents and not their location which determines their status [under the open records law]. To conclude otherwise would elevate form over substance."

Fourth, the majority does not address the administrative difficulties that will accompany its prescribed

The statutes provide numerous exceptions to the open records law. *See, e.g.*, Wis. Stat. § 146.84(1)(c) (health care records); § 71.78 (tax records).

201

procedure, and it leaves the circuit courts, which are assigned the unenviable task of implementing that procedure, neither instruction nor direction regarding how they should do so. If a custodian's decision to open records is challenged, years may pass before a final judicial decision is reached. Woznicki filed his objection in the circuit court on July 19, 1994. It has taken almost two years for a final decision to be reached on Woznicki's objection to the release of the records at issue.[3]

I agree with the majority that the protection of privacy and reputational interests not only goes to the heart of a system of government pledged to protect individuals, their freedoms, and their rights, but also plays an integral role in the balancing test prescribed by the open records law itself. But the majority's decision today neglects another core value in our system of government, one this state's open records law is specifically designed to preserve and promote: insuring that our government is open and accountable to the people it serves. As we stated in *Nichols*, "[t]he open records law serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government." *Nichols*, 199 Wis. 2d at 273 (citation omitted). Should we lose the ability to effectively monitor our government, those rights we cherish—including the right to privacy which the majority opinion intends to protect—would be imper-

---

[3] This delay contravenes the reasoning of *Auchinleck v. LaGrange*, 547 N.W.2d 587, 592 (1996). In *Auchinleck*, the court concluded that the 120-day governmental notice provisions set forth in Wis. Stat. § 893.80(1) were not applicable to the open records laws because "the language and the public policy of the open records and open meetings law require timely access to the affairs of government."

illed. In its decision today, the majority undermines the open records law and risks destroying the very interests it intends to save.

## I.

Prior case law recognizes that the determination of whether a public record should be closed rests with the legal custodian of the record rather than with the general public or any individual. In *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 334 N.W.2d 252 (1983), the subject of the record at issue made the same argument advanced by the subject of the record at issue in this case: that because the open records law reflects a legislative policy to protect reputational and privacy interests, the custodian in charge of the records at issue could not release them. The court disagreed, pointing to the legislature's stipulation that the right to close a record is vested in the custodian rather than the subject of that record.

## II.

Under Wisconsin's open records law, there is "a presumption of complete public access." Wis. Stat. § 19.31. Closing records "generally is contrary to the public interest," and access to records may be denied "only in an exceptional case." *Id.* As the court has stated, in applying this standard "the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law,

or unless there is an overriding *public* interest in keeping the public record confidential."[4]

The majority searches in vain for law supporting its conclusion that notwithstanding this presumption, a custodian deciding to open records implicating an individual's privacy and reputational interests must not only provide that individual with notification but also subject that decision to judicial review.

The open records law itself does not support the majority's holding. It is true, as the majority observes, that Wis. Stat. § 19.35 points to exceptions to disclosure inscribed in the open meetings law, Wis. Stat. § 19.85, as indicative of those situations under which an exception to disclosure under the open records law might also be warranted. But Wis. Stat. § 19.35 cautions that such exceptions "may be used as grounds for denying public access to a record only if the authority or legal custodian . . . makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made." No such demonstration has been made by the district attorney, the custodian in this case.[5]

---

[4] *Hathaway v. Green Bay Sch. Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984) (emphasis added); *see also Wisconsin Newspress*, 199 Wis. 2d at 777.

[5] In *Wisconsin Newspress*, 199 Wis. 2d at 780, this court emphasized that while Wis. Stat. § 19.35 directs a record custodian to consider the exceptions to complete public disclosure in Wis. Stat. § 19.85 when making a determination regarding whether disclosure is warranted, read together the sections "do not result in a clear statutory exception." *Id.* The statutes "simply require the custodian to pay proper heed to the expressed policies in allowing or denying public access to a record." *Id.* Hence the court made clear just a few months ago that whatever intent to protect privacy one might glean from the relation between Wis. Stat. § 19.35 and Wis. Stat. § 19.85 is insufficient

No case law requires a legal custodian to balance the public interest against any private interest such as the one identified by the majority today. The court's previous open records cases simply recognize that in balancing the public interest in opening a record and the public interest in keeping a record closed, a record custodian must incorporate an assessment of how opening a record would affect an individual's reputation because this "is a matter of public interest." *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 433, 279 N.W.2d 179 (1979).

Finding no support in either the open records law or this court's prior decisions interpreting that law, the majority attempts to bolster its holding by claiming that various provisions of the Wisconsin statutes "evince a specific legislative intent to protect privacy and reputation." Majority op. at 185-86. The statutes it cites, however, actually underscore the extent to which privacy and reputational interests must yield to satisfy the presumption of public access inscribed in the open records law.

Hence while it is true that Wis. Stat. § 895.50 creates a privacy right in Wisconsin for the first time, Wis. Stat. § 895.50(2)(c) expressly states that "[i]t is not an invasion of privacy to communicate any information available to the public as a matter of public record." Contrary to what the majority suggests, then, the legislature creating Wis. Stat. § 895.50 made clear that a person's individual right to privacy ends when the information is contained in a public record. *See Newspapers, Inc. v. Breier*, 89 Wis. 2d at 431 (noting that because of Wis. Stat. § 895.50(2)(c), it does not "appear that any right of privacy is afforded by state law" when

---

to defeat the open records law's presumption in favor of complete public access.

public interests under the open records law are involved).

The majority also seeks support from Wis. Stat. § 103.13, which limits an employee's access to the employee's own personnel records, and Wis. Stat. § 230.13, which delineates certain categories of records which may be closed to the public. Neither statute, however, purports to require nondisclosure when an individual's privacy is threatened.

The Wisconsin Newspaper Association and the Wisconsin Freedom of Information Council as amici note in their brief to the court that Wis. Stat. § 103.13 confers upon employers a right to refuse inspection of personnel records under certain circumstances. Nothing in Wis. Stat. § 103.13 vests a right in employees to keep their records closed. Nor does Wis. Stat. § 103.13 prevent an employer from disclosing information in an employee's personnel file to either the employee or anyone else. The majority opinion ignores this distinction between what is permitted and what is required.[6]

Similarly, nothing in Wis. Stat. § 230.13 prevents disclosure of the records enumerated there; the statute simply authorizes nondisclosure. As the court of appeals stated when it had occasion to construe Wis. Stat. § 230.13, just because a custodian may keep a record closed does not mean that a custodian must do so. *Milwaukee Journal v. UW Bd. of Regents*, 163 Wis. 2d 933, 942 n.5, 472 N.W.2d 607 (Ct. App. 1991). Both "the intent of the legislature" and "the rule of the courts," stated the court of appeals, "is that exceptions to public disclosure are to be construed narrowly, and

---

[6] Similarly, the *Bilder* court acknowledged that although custodians were empowered to close public records, they were not required to do so. *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 558, 334 N.W.2d 252 (1983).

we see no indication in § 230.13(2) that it was intended to be a mandatory, rather than a permissive, exemption." *Id.*

I do not dispute that the statutes cited by the majority "evince a clear recognition of the importance the legislature puts on privacy and reputational interests of Wisconsin citizens." Majority op. at 187. Our case law recognizes that the protection of these interests is one of the factors to be incorporated when a custodian balances the public's interest in closing a record against the public's interest in access to and inspection of records. This court has not, however, recognized a protected right to privacy.[7] Rather than

---

[7] *See, e.g., Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 396, 280 N.W.2d 129 (1979) (prior case law indicates a refusal to recognize a right of action for violation of one's right to privacy); *Yoeckel v. Samonig*, 272 Wis. 430, 433, 75 N.W.2d 925 (1956) (same); *see also* Michael J. Fitzgerald, *Public Access to Law Enforcement Records in Wisconsin*, 68 Marq. L. Rev. 705, 725 (1985) (noting that state law does not afford an individual a right to privacy in records).

In *Paul v. Davis*, 424 U.S. 693 (1976), the United States Supreme Court declined the invitation to extend a constitutional right to privacy to records of official action. The defendant had claimed constitutional protection against the disclosure of his arrest on a shoplifting charge. Characterizing the alleged privacy right at stake as "very different" from "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education," the Court noted that none of its substantive privacy decisions had upheld "anything like" the defendant's claim "that the State may not publicize a record of an official act such as an arrest." *Paul v. Davis*, 424 U.S. at 712-13.

Quoting language in its previous decision in *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), stating that "notice and an opportunity to be heard are essential" when "a person's

recognizing or creating a common-law right of privacy, the court has consistently stated that "if the right is to be created, it should be done by the legislature." *Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis. 2d 379, 396, 280 N.W.2d 129 (1979); *Yoeckel v. Samonig*, 272 Wis. 430, 433, 75 N.W.2d 925 (1956).[8]

---

good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the *Davis* Court rejected as overly broad the opportunity to read this language "to mean that if a government official defames a person, without more, the procedural requirements of the Due Process Clause of the Fourteenth Amendment are brought into play." *Davis*, 424 U.S. at 708. Instead, the Court stated, the language " 'because of what the government is doing to him' [in *Constantineau*] referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law—the right to purchase or obtain liquor in common with the rest of the citizenry." *Id.* When no such state law and corresponding right exists, held the Court, reputational interests are "neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.* at 712; *see also Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (holding that plaintiff's due process rights had not been violated when his government employer wrote an allegedly defamatory letter to a prospective employer because, under *Davis*, there is a "lack of any constitutional protection for the interest in reputation"); *Weber v. City of Cedarburg*, 129 Wis. 2d 57, 73, 384 N.W.2d 333 (1986) (citation omitted) ("Reputation by itself is neither liberty nor property within the meaning of the due process clause of the fourteenth amendment. Therefore, injury to reputation alone is not protected by the Constitution."); *State v. Hazen*, 198 Wis. 2d 554, 561, 543 N.W.2d 503 (Ct. App. 1995)("state actions that injure a person's reputation alone do not constitute a deprivation of life, liberty or property necessary to invoke the protection of the due process clause").

[8] The subsequent enactment of Wis. Stat. § 895.50 did create such a right. As I have indicated above, however, the

The open records law cases cited by the majority reflect this limitation on the right to privacy in Wisconsin. None of these cases raises the issue of whether a custodian can be prevented from disclosing particular records. Instead, each case cited by the majority involves a situation in which a custodian sought to *prevent* disclosure of particular records, notwithstanding the presumption in favor of complete public access inscribed in the open records law. *Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 516 N.W.2d 357 (1994) (underlying action initiated by petition for mandamus seeking disclosure of report);[9] *Breier*, 89 Wis. 2d 417 (action arose out of request by the managing editor of *The Milwaukee Journal* for access to police records); *Youmans*, 28 Wis. 2d 672 (mandamus action brought by publisher of *Waukesha Freeman* sought papers held by the Waukesha mayor relating to alleged police misconduct); *Village of Butler v. Cohen*, 163 Wis. 2d 819, 472 N.W.2d 579 (Ct. App. 1991) (action arose when requestors asked for personnel files of police officers).

Such cases can be initiated in the first place because the open records law specifically authorizes a requester to bring an action for mandamus compelling

legislature carefully and explicitly insured that this limited statutory right would neither impede nor trump the presumption of complete public access inscribed in the open records law.

[9] The specific issue presented in *Armada* concerned whether a party could intervene on the side of a custodian seeking to *prevent* disclosure. As the court stated, "[t]he sole issue on review is whether [the petitioner] has a right to intervene . . . under sec. 803.09(1)," the intervention statute. *Armada*, 183 Wis. 2d at 470. "The issue before us," the court proceeded to state, "does not involve a determination under the Open Records law." *Id.* at 473. Hence the majority's reliance on *Armada* is especially misplaced.

a custodian to release a record. Wis. Stat. § 19.37. There is no comparable statute—and no comparable case law—authorizing an action by a person seeking to prevent rather than compel disclosure. Indeed, the cases relied upon by the majority emphasize that "public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied." *Youmans*, 28 Wis. 2d at 683; *see also Breier*, 89 Wis. 2d at 426; *Butler*, 163 Wis. 2d at 825.

Implication alone serves as the foundation for the majority's holding, notwithstanding the admonition of the court in *Hathaway v. Green Bay Sch. Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984): "It would be contrary to general well established principles of freedom-of-information statutes to hold that, by implication only, any type of record can be held from public inspection." Without support from either prior case law or the statutes, the majority crafts novel procedural hurdles for requesters and for custodians who decide to release records implicating privacy and reputational interests.

## III.

In an attempt to salvage its holding, the majority in the final paragraphs of the opinion turns its attention to the fact that the custodian of the records at issue in this case is a district attorney. Because of "the broad discretion afforded to district attorneys in gathering information during investigations," majority op. at 194-95, the majority reasons that records in a district attorney's possession represent especially suitable candidates for the new rules it announces today. Once again, however, the majority fails to support its argument.

First, the majority seeks support from our prior decisions in *State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 477 N.W.2d 608 (1991) and *Nichols*. Both cases, however, involved challenges to a district attorney's power to close records, notwithstanding the open records law. While the court upheld a district attorney's power to keep records closed, it said nothing to suggest that a district attorney therefore *must* keep records closed. As is the case with its interpretation of Wis. Stat. § 230.13, the majority here confuses a discretionary power which allows a particular entity to withhold certain records with a nondiscretionary requirement that those records *must* be withheld from public view. *Cf. Milwaukee Journal v. UW Bd. of Regents*, 163 Wis. 2d at 942 n.5. It therefore extends *Foust* in ways the *Foust* decision itself neither contemplated nor discussed.

Despite the majority's intimation to the contrary, *Foust* neither rests upon nor concerns itself with the privacy or reputational concerns of the subject of a record. Instead, as the *Foust* court explained, the rationale for allowing a district attorney to refuse to disclose records is the "orderly administration of justice" and the "continuing cooperation of the populace in criminal investigations." *Foust*, 165 Wis. 2d at 435.[10]

---

[10] The *Foust* court made clear that insuring the anonymity of informants' statement is important *because* it helps preserve the public's willingness to cooperate in criminal investigations. *Foust*, 165 Wis. 2d at 435. Preserving the anonymity of informants' statements, then, represents a paradigmatic example of the third condition under which the general presumption in favor of complete public disclosure might be defeated: when "there is an overriding *public* interest in keeping the public record confidential." *Hathaway*, 116 Wis. 2d at 397. The major-

Second, the majority asserts that "material gathered by prosecutors is sometimes highly personal and private and can include medical, psychiatric and psychological reports, as well as victims' statements." Majority op. at 194. This is both true and irrelevant. If such records are privileged because, for example, they involve patient-physician communications, their disclosure is already limited by statute[11]—regardless of whether they are held by a district attorney. If, conversely, they are not privileged—as is the case with the personnel records at issue in this case—then the majority opinion hinges disclosure upon who the custodian is rather on the nature of the records themselves.

The records at issue in this case are records subpoenaed from the school district. They implicate the exact same reputational and privacy interests whether they are held by the school district or the district attorney. As the court stated in *Nichols*, "[i]t is the nature of the documents and not their location which determines their status [under the open records law]. To conclude otherwise would elevate form over substance." *Nichols*, 199 Wis. 2d at 274-75.

## IV.

Finally, the majority does not even hint at the difficulties that will be involved in implementing its holding. Today's opinion requires a district attorney to notify all individuals whose privacy and reputational interests might be implicated by a particular disclosure and then to allow "a reasonable amount of time for the individual[s] to appeal the decision." Majority op. at

---

ity has failed to articulate a comparable rationale that might require nondisclosure of the records at issue in this case.

[11] *See* ch. 905 (Evidence-Privileges). The physician patient privilege is incorporated within ch. 905 as Wis. Stat. § 905.04.

193. The majority makes no effort to define the individuals whose privacy and reputational interests are "implicated" by a record. For example, in the case of records pertaining to lobbying activities, numerous individuals who are not subjects of an investigation nevertheless may have privacy interests "implicated" by such an investigation. The majority also provides no assistance to record custodians, record subjects, record requestors or the circuit courts regarding what constitutes a "reasonable" time in which the subject of a record might appeal a record custodian's decision to open a record.

In sum, the majority's opinion draws no support from the open records law or any other statute. It draws no support from the case law. It places record custodians in the impossible position of being sued when they deny access to records and also being sued when they decide to grant access to the same records. Most important, it threatens the integrity of the open records law which already accounts for privacy and reputational interests in the longstanding balancing test used under the law.

For the reasons set forth, I dissent.

I am authorized to state that Justice Ann Walsh Bradley joins this opinion.