Robb W. JENSEN, Plaintiff-Appellant,

v.

SCHOOL DISTRICT OF RHINELANDER, Defendant-Respondent,

RHINELANDER DAILY NEWS, Intervenor-Defendant-Respondent.

Court of Appeals

*No. 01–1841. Submitted on briefs February 5, 2002.—Decided February 12, 2002.*

2002 WI App 78

(Also reported in 642 N.W.2d 638.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David J. Hase* and *Cook & Franke S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mitchell R. Olson* and *Eckert, Kost & Vocke LLP* of Rhinelander.

On behalf of the intervenor-defendant-respondent, the cause was submitted on the brief of *Robert J. Dreps* and *La Follette, Godfrey & Kahn* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Robb Jensen appeals a summary judgment dismissing his action against the School District of Rhinelander and ordering the district to release its evaluation of Jensen's performance pursuant to an open records law request. Jensen argues that (1) summary judgment was inappropriate because whether the board performed the necessary balancing test remains a disputed issue of fact and (2) his reputational interests and the unreliability of the evaluation due to procedural irregularities outweigh the public interest in disclosure. We reject Jensen's arguments.

¶ 2. We independently follow the same two-pronged analysis undertaken by the trial court to review the school board's decision to release Jensen's performance evaluation. *See Kailin v. Rainwater*, 226 Wis. 2d 134, 144, 146, 593 N.W.2d 865 (Ct. App. 1999). We consider whether the board performed the appropriate balancing test before it decided to release the evaluation. *See id.* at 144. Having found that the board performed the balancing test, we conduct a de novo review of the board's decision and independently determine whether the evaluation should be released. *See id.*

¶ 3. We conclude that the board conducted the requisite balancing test, and our independent performance of the balancing test dictates that the evaluation be disclosed. The public interest in disclosure outweighs any resultant damage to Jensen's reputation. Therefore, we affirm the judgment.

679

## BACKGROUND

¶ 4.   The district hired Jensen as its superintendent of schools. Jensen's employment contract provided that it would "be for an automatic and continuous period of two years commencing on July 1, 1998 and ending 2 years from the date the School Board votes to stop the contract from continuing on such automatic and continuous basis."

¶ 5.   On April 24, 2000, the board gave Jensen written notice of the nonrenewal of his contract. The board placed Jensen on administrative leave with pay and benefits, effective July 1, 2000. The district hired an acting superintendent to carry out the duties and responsibilities of superintendent while Jensen remained the district's employee and continued to receive his salary and benefits.

¶ 6.   The board met in closed session on January 22, 2001, to confer with legal counsel and to consider Jensen's performance evaluation data. It completed its evaluation of Jensen's 1999–2000 performance on January 31, 2001.

¶ 7.   On February 1, 2001, the district gave Jensen written notice that it had prepared an evaluation of his performance for the 1999–2000 school year. A document entitled "Superintendent of Schools Evaluation," dated January 31, 2001, accompanied the letter. The district also advised Jensen that it had received an open records request pursuant to Wis. Stat. § 19.35 seeking a copy of the evaluation.[1] It informed Jensen that it intended to

---

[1] Wisconsin Stat. § 19.35 provides in relevant part:

(1) Right to inspection. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the

release the evaluation to the Rhinelander Daily News on a certain date unless Jensen sought legal redress before that date.

¶ 8. Jensen filed an action against the district requesting a declaratory judgment to preclude the evaluation's release. The trial court granted Jensen's motion for a preliminary injunction, restraining and enjoining the district from releasing the evaluation while the action was pending. The court also permitted the Daily News to intervene.

¶ 9. Jensen and the Daily News filed cross-motions for summary judgment. The trial court rejected Jensen's contention that there was a genuine issue of material fact concerning whether the school board actually performed the required balancing test. It determined that the only evidence on whether the board performed the balancing test was supplied by the affidavit of Kay Pohnl, the board president. Having concluded that no issues of material fact precluded the conclusion that the board performed the balancing test, the court undertook a de novo review of the board's decision to release the record. It concluded:

> I would adopt the same reasoning as Ms. Pohnl and go beyond that by finding that it's as likely that damage is done in this community to someone's reputation by withholding information like this and allowing the

---

requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

All statutory references are to the 1999–2000 Wisconsin Statutes, unless otherwise noted.

community to surmise that there is something horrible as there is by releasing this and allowing debate.

The court granted the Daily News' motion for summary judgment, effectively ordering the district to release the evaluation. It entered judgment on May 23, 2001, and extended the preliminary injunction pending appeal.[2] Jensen now appeals.

## SUMMARY JUDGMENT

¶ 10. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08. When reviewing a summary judgment, we perform the same function as the trial court and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Further, the balancing of public interests for and against disclosure of public records upon an open records request is a question of law we review de novo. *Woznicki v. Erickson*, 202 Wis. 2d 178, 192, 549 N.W.2d 699 (1996).

## ANALYSIS

### I. WHETHER BOARD CONDUCTED BALANCING TEST

¶ 11. Jensen argues that summary judgment was inappropriate because whether the board performed the requisite balancing test is in dispute. He maintains that inferences could be reasonably drawn to support his contention that the board did not perform the

---

[2] The injunction staying execution of judgment shall continue in effect until remittitur.

balancing test. For example, Jensen contends there was no mention of the balancing test in a letter he received from the district's attorney or in the minutes of the two January 2001 board meetings. Jensen also contends that there were inconsistencies in Pohnl's affidavit and that, if the board performed the balancing test, it did so before the evaluation was complete. He contends that, "because competing inferences arise from the evidence, summary judgment is inappropriate." *Schlumpf v. Yellick*, 94 Wis. 2d 504, 512, 288 N.W.2d 834 (1980).

¶ 12.  Nevertheless, we conclude that the inferences Jensen attempts to raise are insufficient to rebut Pohnl's unqualified, unequivocal affidavit.

> A party opposing a summary judgment motion must set forth "specific facts," evidentiary in nature and admissible in form, showing that a genuine issue exists for trial. It is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony which is not based upon personal knowledge.

*Helland v. Kurtis A. Froedert Mem'l Luth. Hosp.*, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999). Mere allegations of factual dispute cannot defeat the motion for summary judgment. *Id.*

¶ 13.  Pohnl's affidavit expressly states that the board conducted the balancing test and explains the considerations it took into account in performing the test. "Evidentiary matters in an affidavit accompanying a motion for summary judgment are deemed uncontroverted when competing evidentiary facts are not set forth in counteraffidavits." *WEPCO v. Cal. Union Ins. Co.*, 142 Wis. 2d 673, 684, 419 N.W.2d 255, 259 (Ct. App. 1987). Jensen relies only on inferences that the board

did not perform the balancing test. The circumstances Jensen points to do not reasonably give rise to a legitimately disputed fact in light of Pohnl's unqualified, unequivocal affidavit in which she explains in detail how the board applied the balancing test.

II. BALANCING TEST

■

¶ 14.  Jensen argues that his reputational interests, combined with procedural problems in the evaluation that resulted in an unreliable evaluation, weigh against disclosure. Guided by the strong presumption favoring disclosure, we conclude that the public interests in overseeing the school board and evaluating the manner in which it fulfills its responsibilities outweigh Jensen's reputational interest, which was already harmed when he was placed on administrative leave.

A. EVALUATION PROCESS

■

¶ 15.  The school district has a policy setting forth the procedure for evaluating a school superintendent. Jensen points to a number of steps the board did not perform in completing his evaluation. Jensen argues that because of the board's failure to follow its policy for how evaluations are to be conducted, the board violated his contract and his due process rights. For example, Jensen contends that the contract gave him an opportunity to respond to matters in the evaluation and to identify inaccuracies. He claims because he was entitled

to but not given such an opportunity, the accuracy and reliability of the evaluation is compromised.[3]

¶ 16.   We reject Jensen's argument because problems with the procedure creating a document or its alleged inaccuracy are not proper considerations when performing the balancing test. If we accepted Jensen's argument, a public official could sabotage the subsequent release of public records simply by inserting intentional inaccuracies or employing procedural errors in their production. The evaluation process that results in a presumptively open record is entirely discrete from the balancing of interests after an open records request is made.

¶ 17.   Jensen could seek other avenues of recourse to remedy procedural defects and inaccuracies in the evaluation. For example, he has a statutory right to file a response when the evaluation is released. *See* Wis. Stat. § 103.13(4). If he exercised this right, the public could consider both the evaluation and Jensen's response to determine whether the board acted ill-advisedly or even improperly in the evaluation process it employed or the conclusions it reached.

B. Open Records Law

■

¶ 18.   There is a strong presumption in Wisconsin that all government records are public. Wisconsin Stat. § 19.31 codifies the legislature's policy declaration in favor of open records. It provides that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those

---

[3] The board contends that Jensen was given but declined an opportunity to respond to certain concerns that it raised with Jensen.

officers and employees who represent them." *Id.* The open records law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business." *Id.* "The general presumption of our law is that public records shall be open to the public . . . ." *Wis. Newspress, Inc. v. Sch. Dist.*, 199 Wis. 2d 768, 776, 546 N.W.2d 143 (1996).

¶ 19. "The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." WIS. STAT. § 19.31. However, in construing the open records law, our supreme court has observed, "[t]he statutes and case law have consistently recognized the legitimacy of the interests of citizens to privacy and the protection of their reputations." *Woznicki*, 202 Wis. 2d at 185. In *Woznicki*, the court concluded that public employee personnel records are not exempt from disclosure under the open records law. *Id.* at 183–84. Nevertheless, the court noted that the right to public access is not absolute. *Id.* at 194. The target of the records has an important interest in privacy and reputation that warrants protection. *Id.* The court held:

> Because we conclude that an individual whose privacy or reputational interests are implicated by the [custodian's] potential release of his or her records has a right to have the circuit court review the [custodian's] decision to release the records, it necessarily follows that the [custodian] cannot release the records without first notifying that individual and allowing a reasonable amount of time for the individual to appeal the decision.

*Id.* at 193.

¶ 20. In conducting a de novo review of the custodian's decision to release public records, we bear in mind our supreme court's statement:

> [T]his legislative policy of not disclosing data which may unduly damage reputations carries over to the field of inspection of public records and documents. . . . As applied to inspection it does not bar all inspection of public records and documents that might damage reputations, but requires a balancing of the interest of the public to be informed on public matters against the harm to reputations which would likely result from permitting inspection.

*Kailin*, 226 Wis. 2d at 156 (quoting *Wis. Newspress*, 199 Wis. 2d at 777–78). In *Kailin*, 226 Wis. 2d at 156–57, this court weighed the public interest in disclosure of personnel documents about a teacher and administrator against the harm disclosure would cause to Kailin's privacy and reputational interests. We also considered that media coverage already had diminished Kailin's reputation. *Id.* We determined that "factors in this case weigh on the side of disclosure" and "this case does not present the exceptional circumstances required to overcome the presumption in favor of open records." *Id.* at 157.

■■

¶ 21. "Exceptions should be recognized for what they are, instances in derogation of the general legislative intent, and should, therefore, be narrowly construed . . . ." *Hathaway v. Green Bay Sch. Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984). Nondisclosure results only in exceptional cases. Like *Kailin*, this is not an exceptional case.

## C. De Novo Balancing Test

¶ 22.   As indicated, Jensen, a public official, has a recognized reputational interest to be weighed. He contends that this interest outweighs the public's interest in having access to the evaluation.[4] We have reviewed the evaluation. It exclusively concerns the board's view of the manner in which Jensen performed his responsibilities as superintendent. While Jensen's reputation may be damaged by disclosing the evaluation, as the trial court aptly observed, media reports of Jensen's administrative leave and replacement certainly have already had, at least in the Rhinelander area, some adverse effect on his reputation. This circumstance diminishes Jensen's reputational interest in the balance. "In addition, our courts have recognized that a prominent public official, or an official in a position of authority, should have a lower expectation of privacy regarding his or her employment records." *Wis. Newspress*, 199 Wis. 2d at 787.

¶ 23.   Jensen nevertheless claims that he has an interest in preserving his reputation in order to find similar employment elsewhere. Again, this interest is compromised by the undisputed fact that Jensen has been placed on administrative leave. It is unreasonable to suggest that a prospective employer would not learn of this circumstance and not make appropriate inquiries. Thus, Jensen brings into the balance an already compromised reputational interest.

---

[4] Jensen attempts to diminish the public's interest in the evaluation by again asserting that it was the product of a flawed process and was therefore unreliable. As seen, we have determined that alleged inaccuracies in, or deficiencies in creating, a public record do not inform on the public's interest in the record's release.

¶ 24. We are satisfied that Jensen's effectively diminished reputational interest is insufficient to overcome the strong presumption favoring disclosure, even without regard to the particular public interest against which it is to be weighed. Thus, it is patently inadequate to defeat the manifest public interest in evaluating the board's reasons for placing Jensen on paid administrative leave while hiring an acting superintendent to perform Jensen's duties. Only if it has available what purports to be the board's basis for its actions can the public evaluate the board's judgment, and thus the desirability that its members remain in the public's service.

¶ 25. The public's right to know how the board acted, why the board acted and, perhaps, why the board is duplicating expenditures outweighs Jensen's already diminished reputational interest. Therefore, public interest requires disclosure of the evaluation.

*By the Court.*—Judgment affirmed.