WISCONSIN NEWSPRESS, INC., Sandra Kimball, Press
Publishing Company and Robert Schumacher, Plain-
tiffs-Appellants,

v.

SCHOOL DISTRICT OF SHEBOYGAN FALLS and Robert J.
Englander, Defendants-Respondents.

Supreme Court

*No. 95–0184. Oral argument January 10, 1996.—Decided
April 9, 1996.*

(Also reported in 546 N.W.2d 143.)

For the plaintiffs-appellants there were sealed briefs (in the court of appeals) by *Robert J. Dreps, Linda M. Clifford, James A. Friedman* and *LaFollette & Sinykin*, Madison and oral argument by *Robert J. Dreps*.

For the defendants-respondents there was a sealed brief (in the court of appeals) by *Pamela A. Johnson, Philip C. Reid* and *Cook & Franke, S.C.*, Milwaukee and oral argument by *Pamela A. Johnson*.

ROLAND B. DAY, C.J.   This case is before the court on a petition to bypass the court of appeals, pursuant to Wis. Stat. (Rule) 809.60 (1993-94). The plaintiffs-appellants Wisconsin Newspress, Inc., and

Press Publishing Co. (collectively, Newspapers) seek review of a summary judgment denying the Newspapers' request under the open records law, Wis. Stat. §§ 19.31-.37 (1993-94), to release two records of the School District of Sheboygan Falls (District) involving a disciplinary action against a school district administrator. The issue in this case is whether all disciplinary or personnel records of public employees are exempted from the open records law. We conclude that they are not, and reverse the circuit court's denial of the open records request on this issue. We also conclude, however, that one of the records at issue in this case falls within the attorney-client privilege and we thus affirm the circuit court's judgment denying the release of that record.

During February and March of 1994, the editors of the Newspapers submitted open records law requests to the District, asking for records relating to any disciplinary actions taken against the District's administrator, Norman Frakes. The District released the minutes of several closed meetings of the Board of Education of the School District of Sheboygan Falls, but refused to release any other documents at that time. The District listed nine reasons for its refusal to release the other documents, and claimed that release "would result in disclosure of privileged, confidential personnel information."

The Newspapers then filed suit in the Circuit Court for Sheboygan County, seeking disclosure of the documents. The circuit court denied their requests, ruling that this court's decision in *Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 516 N.W.2d 357 (1994), created an exception to the open records law for public employee disciplinary records. Since the circuit court's

judgment, Mr. Frakes has resigned from his position and taken a new job in another school district.

The first issue we are to resolve is whether our decision in *Armada* exempted public employee disciplinary or personnel records from disclosure under the open records law. This presents a question of law which we review without deference to the circuit court's determination. *Teigen v. Jelco of Wis., Inc.*, 124 Wis. 2d 1, 5, 367 N.W.2d 806 (1985).

This court has long recognized that the open records law "reflects the common law principles favoring access to public records." *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 155, 469 N.W.2d 638 (1991). The "Declaration of policy" for the open records law states:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Wis. Stat. § 19.31. This court has noted:

775

[T]he general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential.

*Hathaway v. Green Bay Sch. Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984); *see also State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 433, 477 N.W.2d 608 (1991).

The question posed in this case is whether public employee disciplinary or personnel records are exempted from the general presumption of disclosure. The circuit court ruled that they were, relying on the following language from this court's decision in *Armada*:

[S]everal sections of the Wisconsin statutes evince a specific legislative policy of protecting privacy and confidentiality in employee disciplinary actions. For example, §§ 19.35(1) and 19.85(1)(b), (c), and (f) except from the open records and open meetings laws records or meetings dealing with disciplinary actions against employees.

*Armada*, 183 Wis. 2d at 474. Section 19.35(1) of the Wisconsin Statutes provides:

(1) RIGHT TO INSPECTION. (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific dem-

onstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

Wis. Stat. § 19.35(1) (1993-94). The cross-referenced section, § 19.85, provides that governmental bodies may meet in closed session when:

> (b)  Considering dismissal, demotion, licensing or discipline of any public employe . . . or the investigation of charges against such person . . . .
> (c)  Considering employment, promotion, compensation or performance evaluation data of any public employe over which the governmental body has jurisdiction or exercises responsibility.
> . . . .
> (f)  Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations.

Wis. Stat. § 19.85(1) (1993-94).
■

Interpreting a version of the open records and open meetings laws enacted prior to the present §§ 19.35(1)(a) and 19.85(1), this court had described the "balancing test" which a record custodian must undertake in deciding whether to release a record:

> We determine that this legislative policy of not disclosing data which may unduly damage reputations carries over to the field of inspection of public records and documents. The statutory word

777

"unduly" is significant. As applied to inspection it does not bar all inspection of public records and documents that might damage reputations, but requires a balancing of the interest of the public to be informed on public matters against the harm to reputations which would likely result from permitting inspection.

*State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 685, 137 N.W.2d 470 (1965); *see also Wisconsin State Journal v. University of Wisconsin-Platteville,* 160 Wis. 2d 31, 40-41 n.3, 465 N.W.2d 266 (Ct. App. 1990) (applying *Youmans*) [hereinafter *UW-Platteville*]. Cases of both this court and the court of appeals have applied this balancing test, now incorporated in § 19.35(1), in determining when records should be released under the open records law. *See, e.g., Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979) (balancing test involves determination "whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection."); *Mayfair Chrysler-Plymouth,* 162 Wis. 2d at 164-65; *Journal/Sentinel, Inc. v. School Bd. of the School District of Shorewood,* 186 Wis. 2d 443, 457, 521 N.W.2d 165 (Ct. App. 1994) [hereinafter *Shorewood*].

Courts have also applied the balancing test to personnel records. In one such case, *UW-Platteville,* 160 Wis. 2d at 36-42, the court of appeals balanced the public policy expressed in § 19.31, which presumes openness and disclosure, against the public policy expressed in § 19.85, which recognizes that the release of certain personnel records, such as disciplinary records, could cause harm to the public or to employees. After concluding that certain meetings at issue in the case had been properly closed under § 19.85(1)(f)

because they discussed personnel and disciplinary matters, the court stated, "[t]his conclusion, however, does not end our inquiry. It does not follow that, simply because meetings were properly closed under sec. 19.85(1)(f), Stats., documents compiled in conjunction with those meetings are exempt from disclosure under sec. 19.35(1)." *Id.* at 38.

The method of analysis applied in *UW-Platteville* is consistent with a common-sense reading of the open records and open meetings laws. The plain language of § 19.35(1)(a) directs the record custodian to consider the public policies expressed in § 19.85, among which is the expression of a general public policy against opening disciplinary or personnel proceedings, when making a decision whether or not to release a record. The sections, on their face, do not result in a "clear statutory exception," *see Hathaway*, 116 Wis. 2d at 397, forbidding the release of all public employee disciplinary records; rather, the statutes simply require the custodian to pay proper heed to the expressed policies in allowing or denying public access to a record.

The District, however, points to three cases of the court of appeals, *Village of Butler v. Cohen*, 163 Wis. 2d 819, 472 N.W.2d 579 (Ct. App. 1991); *Law Offices of William A. Pangman & Assoc. v. Stigler*, 161 Wis. 2d 828, 468 N.W.2d 784 (Ct. App. 1991); and *Law Offices of William A. Pangman & Assoc., S.C. v. Zellmer*, 163 Wis. 2d 1070, 473 N.W.2d 538 (Ct. App. 1991). The District argues these cases stand for the proposition that Wisconsin courts have "consistently held that public policy prohibits disclosure of personnel records related to disciplinary actions." In these cases, the court of appeals did hold that some personnel records of

police officers should not be released to attorneys representing criminal defendants; however, in each case the court of appeals clearly applied the balancing test in making its determination. *See Cohen*, 163 Wis. 2d at 825; *Stigler*, 161 Wis. 2d at 840; *Zellmer*, 163 Wis. 2d at 1080. The cases do not stand for the proposition that there is a blanket exception for personnel records under the open records law. Rather, the balancing test must be applied "on a case-by-case basis." *Stigler*, 161 Wis. 2d at 840. The rule from these and the rest of this court's cases is that the balancing test must be applied in every case in order to determine whether a particular record should be released, and there are no blanket exceptions other than those provided by the common law or statute. *See Youmans*, 28 Wis. 2d at 682 ("We deem it unwise to attempt to catalog the situations in which harm to the public interest would justify refusal to permit inspection. It is a subject which had best be left to case-by-case decision."); *Hathaway*, 116 Wis. 2d at 397.

In fact, *Armada*, the case on which the circuit court relied in the present matter in ruling that personnel records are excepted from the open records law, ultimately endorsed the application of the balancing test to the records at issue in the case. In *Armada*, a public employee sought to intervene in an open records law action filed against his employer. *Armada*, 183 Wis. 2d at 467. The action sought the release of an investigative report in which the employee was a subject. *Id.* This court held that the employee did have a legally protected interest in the action, and a right to intervene. *Id.* at 475. The court noted, however, that its review was limited to the issue of intervention: "The issue before us does not involve a determination under the Open Records law. We do not decide whether [the

investigative report] should be disclosed to the public."
*Id.* at 473. In fact, the *Armada* court remanded the case
to the circuit court. *Id.* at 477. If there were a blanket
exception for public employee records, such a remand
would not have been necessary.

Thus, to be consistent with the case itself, the stat-
utory language of the open records law, and the many
cases discussed above which require a case-by-case
application of the balancing test, the language from
*Armada* on which the circuit court in the present mat-
ter relied should be clarified to the extent that it may
be read as creating a blanket exception for disciplinary
records. The statement in *Armada* that "secs.
19.35(1)(a) and 19.85(1)(b), (c), and (f), except from the
open records and open meetings laws records or meet-
ings dealing with disciplinary actions against
employees" was noting the general public policy, as
shown in the statutes, against releasing disciplinary or
personnel records. This policy is to be weighed in the
balancing test, but it does not automatically require
that such records cannot be disclosed. Instead, the pub-
lic policies favoring disclosure, including the
presumption of openness as described in § 19.31, are
weighed against any policies favoring keeping the
records from public view. *See, e.g., Newspapers, Inc.*, 89
Wis. 2d at 427; *Mayfair Chrysler Plymouth*, 162 Wis. 2d
at 164-71; *Shorewood*, 186 Wis. 2d at 457-59. The
*Armada* court, by its language noting the public poli-
cies disfavoring the disclosure of disciplinary records,
did not create an exception to this established method-
ology of the balancing test.

Having determined that there is no blanket excep-
tion under the open records law for public employee

disciplinary or personnel records, the next question is did the District properly deny access to the records at issue in this case. This presents a question of law which we review without deference to the courts below. *Mayfair Chrysler-Plymouth*, 162 Wis. 2d at 154-55.

These records consist of two documents.[1] The first document is a letter from the District's attorney to the District. For convenience, we will refer to this document as the "attorney letter." The second document is a letter from the District to Mr. Frakes, which describes the sanctions imposed as a result of the disciplinary actions taken against him. We will refer to this document as the "District letter."

The District argues that the attorney letter is protected by the attorney-client privilege. *See* Wis. Stat. § 905.03 (1993-94).[2] As we have already noted, exceptions to disclosure created under the common law or by statute still apply under the open records law. *See* Wis. Stat. § 19.35(1)(a); *Hathaway*, 116 Wis. 2d at 397. The District argues that release of the attorney letter would disclose confidential communications between the District and its attorney. Our review of the attorney letter shows that the District is correct. Although the Newspapers only seek the disclosure of a portion of the letter, the release of such portion of the attorney letter

---

[1] Pursuant to the circuit court's order, both documents were placed in the record for this case and the record was sealed. We were thus able to review the documents in reaching our decision.

[2] Wis. Stat. § 905.03 provides in part:

> (2) GENERAL RULE OF PRIVILEGE. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . .

would reveal information protected by the attorney-client privilege. The Newspapers argue that the attorney-client privilege generally does not apply to communications from the lawyer to the client, citing *Shorewood*, 186 Wis. 2d at 460. However, an exception is where disclosure of the communication would indirectly reveal the substance of the District's confidential communications to its lawyer. *Id.* We conclude that such an indirect revelation would occur in this case.

■■■

The Newspapers also contend that the attorney-client privilege should not apply in this case because the privilege only extends to confidential communications which are not intended to be disclosed to third persons. Section 905.03(1)(d) provides: "a communication is 'confidential' if not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client . . . ." The record shows that the contested portions of the letter were discussed with Mr. Frakes. However, the record also shows that the contents of the attorney letter were not disclosed to anyone other than the members of the school board and Mr. Frakes. We conclude that the disclosure of the contested portion of the letter to Mr. Frakes was in furtherance of the rendition of professional legal services to the District. We therefore affirm the portion of the circuit court's judgment withholding the attorney letter.[3]

---

[3] Because we conclude that the document in question falls under the attorney-client privilege, we do not reach the District's argument that it is also privileged as attorney work product. *See State ex rel. Dudek v. Circuit Court*, 34 Wis. 2d 559, 150 N.W.2d 387 (1967).

For the remaining document, the District letter, we must still apply the open records law balancing test to determine whether the record should be released. Because the application of the balancing test presents a question solely of law, we may perform the test on review even if the circuit court did not apply the test. *See Cohen*, 163 Wis. 2d at 823 n.1. We follow a two-step procedure in reviewing open records cases:

> First, we must decide if the trial court correctly assessed whether the custodian's denial of access was made with the requisite specificity. Second, we determine whether the stated reasons are sufficient to permit withholding, itself a two-step analysis. Here, our inquiry is: (1) did the trial court make a factual determination supported by the record of whether the documents implicate the public interests in secrecy asserted by the custodians and, if so, (2) do the countervailing interests outweigh the public interest in release.

*Milwaukee Journal v. Call*, 153 Wis. 2d 313, 317, 450 N.W.2d 515 (Ct. App. 1989) (citations omitted) (quoted in *Mayfair Chrysler-Plymouth*, 162 Wis. 2d at 157). There is no dispute over specificity in the present case; the parties agree that the District stated its reasons for denial with sufficient specificity in its letters responding to the Newspaper's open records requests, each of which provided nine reasons for withholding the records. As the District argues in its briefs before this court, its reasons for withholding the documents in question boil down to the fact that they contain "information regarding employee performance and other sensitive personnel information." Our review of the records at issue in this case supports the circuit court's finding, implicit in its decision that *Armada* excepted

personnel records from the open records law, that the records contain such personnel information. We therefore turn to the final step of our analysis under *Call*: whether the interests asserted by the District would cause harm to the public interest which would outweigh the public interest in release. *Call*, 153 Wis. 2d at 317; *see also Youmans*, 28 Wis. 2d at 681-82.

The District first points to *Cohen*, 163 Wis. 2d at 819; *Stigler*, 161 Wis. 2d at 828; and *Zellmer*, 163 Wis. 2d at 1070, as examples of cases favoring the withholding of personnel files. These cases note several public policies against disclosure of such records, including protecting the reputation of individuals, *see Cohen* at 829-30, encouraging open and honest evaluations by supervisors, *see id.* at 831, and avoiding loss of morale or causing public employees to choose other employment because of the possible disclosure of personnel records, *see Zellmer*, 163 Wis. 2d at 1083, 1089.

These cases note, as we have already observed in this opinion, that personnel records may contain sensitive information which might have harmful effects on the public if released. This is a factor properly weighed in the balancing test, and we take it into account in the present case. We also note, however, that the application of the balancing test in the three cases cited by the District involved factors peculiar to law enforcement. *See, e.g., Zellmer*, 163 Wis. 2d at 1087, 1089 (disclosure of personnel records would have "chilling effect" on law enforcement because officers might make fewer arrests if they knew their personnel files "might be made public as a result of arrest"); *Cohen*, 163 Wis. 2d at 831 (possibility of cross-examination on matters in personnel records might impair police officer's ability or willingness to testify in court); *Stigler*, 161 Wis. 2d at

840 (release of records would endanger officer engaged in undercover work). The cases thus provide less support for withholding the records in the present matter, where such interests are not implicated.

Against the interests asserted by the District, we consider the public policies favoring disclosure. In this case, we find that these policies, as described below, weigh in favor of allowing the release of the District letter.

First, as stated in the declaration of policy to the open records law, Wis. Stat. § 19.31, is the general public policy that "all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. . . . The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." *See also Breier*, 89 Wis. 2d at 433-34 (open records law "reflects a basic tenet of the democratic system—that the electorate must be informed of the workings of government.")

The public has a particularly strong interest in being informed about public officials who have been "derelict in [their] duty." *Youmans*, 28 Wis. 2d at 685; *see also Shorewood*, 186 Wis. 2d at 459 (citing 74 Op. Att'y Gen. 14, 16 (Wis. 1985)). When exposing such misconduct, "the fact that reputations may be damaged would not outweigh the benefit to the public interest in obtaining inspection." *Youmans*, 28 Wis. 2d at 685. In the present matter, therefore, although release of disciplinary records might cause some reputational harm to Mr. Frakes, the subject of the records, we may nonetheless consider the public's interest in information about

misconduct by public officials to weigh more heavily in the balancing of interests.

In addition, our courts have recognized that a prominent public official, or an official in a position of authority, should have a lower expectation of privacy regarding his or her employment records. In *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 557, 334 N.W.2d 252 (1983), this court allowed access to a police chief's files, noting that "[t]he documents in issue apparently contain information relating directly to [the police chief's] professional conduct . . . . By accepting his public position [the police chief] has, to a large extent, relinquished his right to keep confidential activities directly relating to his employment as a public law enforcement official." Similarly, in *UW-Platteville*, 160 Wis. 2d at 41, the court of appeals noted, in its application of the balancing test in an open records case, that the dean of a department at a state university, in taking his position "of public prominence," had "little reasonable expectation of privacy regarding his professional conduct." In the matter presently before the court, we note that Mr. Frakes was the administrator of the school district, a position which elevated him to the view of the public; we thus, in our application of the balancing test, assign less weight to his personal expectation of privacy regarding activities related to his employment.

The court of appeals in *UW-Platteville* also noted another factor relevant to our analysis in this matter. Discussing the possible harm to the reputation of the subject of a disciplinary action, the court stated:

> In addition, the dangers of harm to reputation which might have justified nondisclosure *during* an

787

investigation are no longer present once the investigation is complete. While an investigation is continuing, the subject may suffer adverse reputational harm, whether warranted or not, simply because of the stigma that attaches as a result of being the "subject of an investigation."

Once the investigation is complete, however, the danger of warrantless harm to reputation is reduced.

*UW-Platteville*, 160 Wis. 2d at 42. In the present matter, the disciplinary action against Mr. Frakes has been completed, and there would be no danger of creating false impressions by now releasing the results of the disciplinary action in the form of the sanctions imposed. The District argues that the reasoning from *UW-Platteville* should only apply when the subject of the investigation is cleared of wrongdoing, as was the subject in that case. *See id.* Making such a distinction would be erroneous. Whether or not a person has been cleared of the charges against him or her, the completion of the investigation removes the danger warned against in *UW-Platteville*: that a subject of investigation might be stigmatized simply for being under investigation. And, as we have already stated, we are to give greater weight to the public's interest in knowing the disciplinary results of conduct of its public officials than to the possible harm to a particular official's reputation.

Having balanced the public policies favoring disclosure in this case, we conclude that they outweigh the general public policy against releasing this type of employee personnel record, and thus we allow the disclosure of the District letter. Now that the investigation has concluded, the public has a right to know its results. We therefore reverse that portion of

the circuit court's judgment which denied access to the District letter and remand to the circuit court so that it may order the document's release.

*By the Court.*—The decision of the circuit court is affirmed in part and reversed in part, and the cause remanded for further proceedings not inconsistent with this opinion.