STATE EX REL. JOURNAL/SENTINEL, INC. and Anne
Bothwell, Petitioners-Respondents,

v.

Philip ARREOLA, Chief of Police, City of Milwaukee,
Respondent-Appellant.

Court of Appeals

*No. 95–2956. Oral argument August 27, 1996.—Decided
December 17, 1996.*

(Also reported in 558 N.W.2d 670.)

496

498

For the respondent-appellant the cause was submitted on the briefs of *Grant F. Langley*, city attorney and *Susan E. Lappen*, assistant city attorney. There was oral argument by *Susan E. Lappen*.

For the petitioners-respondents the cause was submitted on the briefs of *David M. Lucey* and *Paul Bargren* of *Foley & Lardner* of Milwaukee. There was oral argument by *David M. Lucey*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

WEDEMEYER, P.J. Police Chief Philip Arreola and the City of Milwaukee (hereinafter referred to collectively as "the City") appeal from an order issuing a writ of mandamus requiring the City to release certain police documents pursuant to an open records request made by a Journal/Sentinel, Inc. reporter. The City claims the trial court erred in issuing the writ because the requested records involve officer personnel records and, therefore, should not be released on public policy grounds. Because the right of the public to have access to the majority of these records outweighs any public policy concerns raised by the City, we affirm in part; and because some of the concerns raised by the City outweigh the public's right to access certain portions of the requested records, we modify the order in part.

## I. BACKGROUND

Anne Bothwell, reporter for Journal/Sentinel, Inc., in letters dated September 27, 1994, and September 29, 1994, made an open records request for certain information from the Milwaukee Police Department. Specifically, Bothwell requested:

> Copies of the reports filled out every time a police officer discharges his or her weapon, from 1990 to date, and from 1980 to 1985.
> I understand the department has recently created a "use of deadly force" report. I would like

copies of each report that has been filed since the document was created.

I also realize that, prior to the creation of the "use of deadly force" report, officers who discharged their weapons were required to file a report on the incident. I'd like a copy of each report filed to document those incidents.

And in the alternative, Bothwell requested:

Also, if my request for the reports detailing discharges of weapons and use of deadly force are [sic] denied, please provide me with the following information for each year from 1980 to 1985, and from 1990 to the present:

-The number of times police officers discharged their weapons

-The number of times those discharges resulted in a person being struck by gunfire

-The number of times those shootings were fatal

-The number of times those discharges resulted in an animal being struck

-The number of times those discharges were determined to be accidental

-The date, time and location of each occurrence

-The name, age, address, race and sex of each person who was shot

-The name, age, sex, race, and length of service with the department of the officer whose weapon was discharged.

-A brief description of the circumstances under which each weapons discharge occurred.

The police records custodian denied both of Bothwell's requests by letters dated October 14, 1994, and January 4, 1995. The denial letters indicated that this information would not be released, stating in pertinent part:

503

Please be advised that your request for copies of the aforementioned reports is denied. These are pending ongoing administrative internal personnel matters.

Open or closed personnel reports and investigations are not subject to disclosure pursuant to the Open Records Act.

The Milwaukee Police Department's ability to conduct ` thorough confidential internal investigations, including the gathering of statements from members of the Department as a condition of their employment would be seriously hampered by disclosure of such investigations. . . .

In addition, we are denying disclosure as in the case of the Village of Butler v. Cohen, 163 Wis. 2d 819, 472 N.W. 2d 579 (Ct. App. 1991). The following are specific policy reasons for nondisclosure of personnel-related material, in that disclosure would: (1) Run counter to the legislature's recognition in sec. 19.85(1) Stats., of the need to keep personnel records confidential, to maintain the reputational and privacy interests of the employee; (2) Give the requester greater access to the records than the employee; (3) Subvert the municipalities' policy of ensuring employees opportunities for satisfying careers and fair treatment based on value of service; (4) Impinge upon the officers' ability to have and retain competent personnel; (5) Prevent a reviewer from making candid assessments of an officer; and (6) Run counter to the municipalities' interests in maintaining the confidentiality of its personnel records which are closed under sec. 230.13(5) Stats.

We are further denying disclosure because sec. 103.13(2) Stats., indicates that this information should only be turned over upon the request of the employee or pursuant to a waiver by the employee. Release of this information without a waiver would

thwart the public policy of nondisclosure contained in sec. 103.13(2). In addition, the State has closed similar records of state employee discipline pursuant to sec. 230.13(5) Stats. We believe that, by analogy, this is also indicative of public policy justifying their confidentiality. Federal common law has further established that these records are confidential. See Ballard v. Terrek, 56 F.R.D. 45 (E.D. Wis. 1972).

The City denied Bothwell's alternate records request as well, stating:

> With regards to your request for statistical information, please be advised that your request for a copy of this information as afore described is denied. Pursuant to ss 19.35(1)(L), ". . . this subsection does not require an authority to create a new record by extracting information from existing records and compiling the information in a new format."

On January 17, 1995, Journal/Sentinel, Inc. and Bothwell filed a petition for a writ of mandamus with the Circuit Court. The City moved to quash the petition, but this motion was denied. The trial court held several hearings regarding the petition, conducted an *in camera* review of a sampling of the requested records, and eventually issued the writ. Specifically, the writ ordered that the City provide Bothwell with:

a. A copy of each report filed every time a police officer discharges his or her weapon, from 1990 to date, and from 1980 to 1985.
b. If different, any other report on the use of deadly force for the same time periods.
c. If different, any other report filed by an officer who discharged his or her weapon concerning said discharge for the same time periods.

d. All reports summarizing or detailing discharges of weapons or other use of deadly force for the periods 1980 to 1985 and 1990 to present which contain all or parts of the following information:

(1) The number of times police officers discharged their weapons.

(2) The number of times these discharges resulted in a person being struck by gunfire.

(3) The number of times those discharges were fatal.

(4) The number of times those discharges resulted in an animal being struck.

(5) The number of times those discharges were determined to be accidental.

(6) The date, time and location of each such occurrence.

(7) The name, age, address, race and sex of each person who was injured as a result thereof.

(8) The name, age, address, race, sex and length of service of the officer of the Department whose weapon was discharged.

(9) A brief description of the circumstances under which each such weapon discharge occurred.

e. To the extent the records reflect the identity of a person outside the Milwaukee Police Department who provided information to the Milwaukee Police Department on the subjects requested and who requested, at the time of providing such information, that his or her identity be kept confidential, the information pertaining to such person may be expunged prior to production.

The City now appeals.

## II. DISCUSSION

The City claims the records requested involve documents generated and maintained solely for the purposes of personnel evaluation and discipline. As a result, the City maintains that public policy concerns outweigh the general right of the public to have access to these records. In response, Journal/Sentinel, Inc. and Bothwell claim that the records are not personnel records and that the public's right to access this information outweighs any public policy concerns. The trial court ruled:

> Okay, well, there is no more awesome power exercised by government than that of the police. The police have literally the power of life and death over citizens they are to protect, but the power of the police in our republic is limited. Ours is a representative form of government, and in recognition of that fact, the Wisconsin legislature has said at Section [19.31] of the . . . Wisconsin statutes that . . . "In recognition of the fact that a representative government is dependent upon an informed electorate, it's declared to be the public policy of this State that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." . . . "To that end, Sections [19.32 to 19.37] shall be construed in every instance with a presumption of complete public access consistent with the conduct of governmental business. The denial of public access generally is contrary to public interest and only in an exceptional case may access be denied." . . .

Now, this public policy statement must apply, I think, with utmost vigor to the situation at hand where the information sought concerns the police exercise of its most extreme power, the use of deadly force. . . . [Y]ou can't take a matter like police discharging its weapons and call it personnel records and hide it from the public. I just don't think that's right. The police chief, then, has to either make those records available to a reasonable extent or he has to create some other records that the public has access to so the public knows whose firing the weapons, who is firing them, when they are being fired, and the general circumstances around them. . . .

. . . Generally, you should deny access to the personnel files, but here there is no other way, it seems, for the public to know what's happening with the firing of weapons in this city, and I think the public in this city has an overriding concern in having that information available to it, and it overrides, unfortunately, the chief's interest in keeping his personnel files private. . . .

. . . I have to agree with the plaintiff in this case, and I will issue the writ of mandamus and make that writ absolute on the points that you have requested, that is, the P-10 information where it is available, any statistical data that the department has concerning these things and before the P-10 information was extant, the old PI — old PI-4 form.[1] That is the order of the Court.

[1] These forms are also known as "In the Matter of" forms and "Use of Force" forms. The "matter of" forms, used prior to the middle of 1993, are simply a narrative description of the event at issue, a recounting of the investigating officers' findings, and a conclusion by the supervisor as to what actions should be taken with respect to the officer who discharged the weapon. The "use of force" reports, which replaced the earlier

■

The review in this case involves interpretation of statutes as applied to undisputed facts. Accordingly, we will apply the *de novo* standard of review. *Bitters v. Milcut, Inc.*, 117 Wis. 2d 48, 49, 343 N.W.2d 418, 419 (Ct. App. 1983).

■

According to the open records law, § 19.31, STATS., "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business." *See also* §§ 19.32–.37, STATS. Case law construing this statute provides, " 'The general presumption . . . is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential.' " *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 156, 469 N.W.2d 638, 643 (1991). The instant case primarily presents an issue with respect to the third factor.

Although both parties spend a significant amount of time attempting to label the requested records as "personnel records" or as records that are not considered personnel records, this categorization is not dispositive. Even if these records are construed to be personnel records, they are not automatically exempt from disclosure. The issue of whether records which are labelled "personnel" should be disclosed has been addressed repeatedly in the case law. In *Village of*

---

documents, include both a pre-printed form with space for a description of the incident, the location, the officers involved, the suspect and the witnesses. These forms also provide a narrative detailed description of the incident with a specific place for the commanding officer's recommendation.

*Butler v. Cohen*, 163 Wis. 2d 819, 472 N.W.2d 579 (Ct. App. 1991), this court held that public policy favoring nondisclosure of personnel records outweighed the presumption of disclosure. Similarly, in *Pangman & Associates v. Stigler*, 161 Wis. 2d 828, 839, 468 N.W.2d 784, 788 (Ct. App. 1991), and in *Pangman & Associates, S.C. v. Zellmer*, 163 Wis. 2d 1070, 1083, 473 N.W.2d 538, 543 (Ct. App. 1991), requests for personnel records of police officers made pursuant to the open records law were denied and the records were not released.

None of these cases, however, stands for the proposition that records categorized as "personnel" records are entitled to a blanket exemption from disclosure. This issue—whether all disciplinary or personnel records of public employees are exempted from the open records law—was specifically addressed and decided by our supreme court in *Wisconsin Newspress, Inc. v. Sheboygan Falls School District*, 199 Wis. 2d 769, 546 N.W.2d 143 (1996). In *Wisconsin Newspress*, our supreme court rejected the notion that all disciplinary or personnel records of public employees are entitled to a blanket exemption from the open records law. *Id.*, 199 Wis. 2d at 775, 546 N.W.2d at 145. The court held that whether personnel records are subject to disclosure must be examined on a case-by-case basis. *Id.* at 781, 546 N.W.2d at 147. Here, the City conceded that personnel records are not automatically exempt from disclosure during oral argument, but nonetheless suggests that the City's interests in not disclosing this information outweighs the public's interest in accessing the requested information.

In reviewing the instant case, we apply a balancing test to determine whether the City is

correct.[2] *Id.* We must determine whether the public policies favoring disclosure, including the presumption of openness as described in § 19.31, STATS., are outweighed by the public policies favoring nondisclosure, *id.* at 782, 546 N.W.2d at 148, such as those raised by the City: (1) disclosure would adversely affect the police department's ability to conduct effective investigations; (2) disclosure would impinge on officers' reputational and privacy interests; (3) disclosure would give the requester greater access to the records than the employee has; (4) disclosure would impinge on the department's ability to attract and retain competent personnel; (5) disclosure would discourage victims and witnesses from providing

---

[2] Our review included an *in camera* inspection of the sampling of the requested records. The general procedure set forth for reviewing open records cases involves a two-step procedure:

> First, we must decide if the trial court correctly assessed whether the custodian's denial of access was made with the requisite specificity. Second, we determine whether the stated reasons are sufficient to permit withholding, itself a two-step analysis. Here, our inquiry is: (1) did the trial court make a factual determination supported by the record of whether the documents implicate the public interests in secrecy asserted by the custodians and, if so, (2) do the countervailing interests outweigh the public interest in release.

*Milwaukee Journal v. Call*, 153 Wis. 2d 313, 317, 450 N.W.2d 515, 516 (Ct. App. 1989) (citations omitted). The first step of this test was not challenged—that is, neither party disputes that there is adequate factual support for the trial court's determination that the police record custodian's denial of access was made with the requisite specificity. We concur with this determination. Accordingly, we need to address only the second step of the procedure—the balancing test.

information. In applying the balancing test, we weigh each of these countervailing interests *seriatim.*[3]

---

[3] Those countervailing interests raised by the City not specifically addressed in the text of this opinion are summarily rejected for the reasons explained below.

The City's claim that disclosing these records would affect how a police officer handles a situation involving a firearm is raised for the first time on appeal and, therefore, we need not address it. *Pangman & Assocs., S.C. v. Zellmer,* 163 Wis. 2d 1070, 1085, 473 N.W.2d 538, 544 (Ct. App. 1991) ("It is not for . . . appellate courts to hypothesize or consider reasons for not permitting inspection which were not presented by the custodian.").

In its initial denial, the City raised two additional concerns: (1) that disclosure would run counter to the municipalities' interests in maintaining the confidentiality of its personnel records which are closed under § 230.13(5), STATS.; and (2) that disclosure would violate § 103.13(2), STATS. We conclude that neither justifies withholding the records. First, § 230.13(5), STATS., was repealed and is no longer current law. *See* 1989 Act 31, §§ 2522-24. Second, the City argues that § 103.13(2), STATS., indicates that this information should *only* be turned over upon the request of the employee or pursuant to a waiver by the employee. Although this statute does provide employees with the right to inspect their own personnel records, it does not prohibit the disclosure granted in the instant case.

We also reject the City's argument that federal law supports withholding of the requested information. The City's argument in this regard rests solely on the *Ballard v. Terrak,* 56 F.R.D. 45 (E.D. Wis. 1972) case. We have previously rejected the applicability of *Ballard, see Pangman & Assocs., S.C.,* 163 Wis. 2d at 1083-84, 473 N.W.2d at 544, and see no reason for *Ballard* to persuade us here.

The City's reliance on *Village of Butler v. Cohen,* 163 Wis. 2d 819, 472 N.W.2d 579 (Ct. App. 1991), is also misplaced. *Cohen* involved a much different factual scenario than presented in the instant case. The subject records in *Cohen*

We emphasize that the information that is subject to disclosure must be reviewed on a case-by-case basis, and will not be identical in every case. Accordingly, our analysis in the instant case is limited to the case at bar. As challenges to the open records law are presented, the trial court should determine what information is subject to disclosure after an *in camera* inspection. We emphasize the importance of this procedure and the need to have each case individually examined rather than setting forth any absolutes applicable to all instances of apparent conflict.[4]

We turn now to an examination of the countervailing interests raised by the City. The City suggests that disclosing the reports would hamper the police department's ability to conduct effective investigations. We are not persuaded that this concern justifies blanket withholding of all the information requested. First, this concern is countered by the fact that Journal/Sentinel, Inc. (as argued both in its brief and at oral argument) is looking for solely factual

---

involved a request for a complete personnel file, not for records solely with respect to deadly force issues. Accordingly, *Cohen* is not controlling in the instant case.

[4] To avoid an opinion that is heavily overwritten, we address only dispositive issues which were specifically raised under the facts presented. We decline to address any and all additional issues that although not raised in the instant case, may surface in future cases. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the narrowest possible grounds); *see generally*, 1 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 8a at 617 (3d ed. 1983) (discussing avoidance of "overconsideration of every point of law raised in the briefs").

information. Factual material gathered in connection with an investigation of police conduct is generally subject to public inspection. *See State ex rel. Youmans v. Owens*, 32 Wis. 2d 11, 144 N.W.2d 793 (1966). Further, any impact on investigations if solely factual information is disclosed would be remote. These incidents are occurring in public. Limiting the disclosure to only the facts should not impact on an officer's ability to conduct an investigation.

■

This concern, however, may justify withholding certain portions of the documents at issue. The portions of the reports that are not purely factual information may legitimately be withheld in order to maintain the effectiveness of ongoing investigations. That is, any supervisory opinions containing recommendations or concerns made for future action or criticisms of past actions may legitimately be withheld. These portions of the forms, which required supervising officers to render an opinion regarding the investigation should be withheld because supervisors might be less than candid if they know that the documents are subject to public disclosure. Moreover, the need to conduct thorough investigations and maintain the integrity of the investigations relative to supervisory opinions outweighs the presumption that all public records should be disclosed. *See Zellmer*, 163 Wis. 2d at 1082, 473 N.W.2d at 543. Accordingly, with respect to these described portions of the reports, we conclude that the City's concern does outweigh the public's right to access this information. The remaining portions of the requested forms, however, are not impacted by this concern and, therefore, must be made available.

The City's main argument for blanket withholding is that the officers' reputational and privacy interests need to be protected and that disclosing the requested reports would harm those interests. The City suggests that recent case law demonstrates that our supreme court has placed a high priority on protecting reputational and privacy interests. *See Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996).

We do not disagree that *Woznicki*, which held that the open records law does not provide a blanket exemption for public employee personnel records, emphasized the importance of protecting an individual's privacy and reputational interests. *Id.* at 180-81, 549 N.W.2d at 700. Nevertheless, *Woznicki* is very different from the instant case and we are therefore not wholly persuaded by the City's arguments of its application in this regard.

■ The instant case, unlike *Woznicki*, involves police officers who are discharging weapons in public places. When individuals accept positions as police officers, they necessarily relinquish certain privacy rights and must be subject to public scrutiny. *See Wisconsin State Journal v. University of Wisconsin-Platteville*, 160 Wis. 2d 31, 41, 465 N.W.2d 266, 270 (Ct. App. 1990). As a result of their public employment, police officers have a lower expectation of privacy. *Wisconsin Newspress*, 199 Wis. 2d at 788, 546 N.W.2d at 150. Moreover, in *Woznicki*, the reports at issue were a teacher's personnel file and personal phone records, which had been subpoenaed by the district attorney. *Id.* at 181, 549 N.W.2d at 701. The reports at issue here are factual reports documenting police officers' use of deadly force. The public has a compelling interest in monitoring the use of deadly force by police officers and

such interest outweighs the police officers' expectation of privacy with regard to discharging their weapons while working as police officers.

As aptly stated by the trial court:

> [T]here is no more awesome power exercised by government than that of the police. The police have literally the power of life and death over citizens they are to protect, but the power of the police in our republic is limited. . . . "In recognition of the fact that a representative government is dependent upon an informed electorate, it's declared to be the public policy of this State that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." . . . "To that end, Sections [19.32 to 19.37] shall be construed in every instance with a presumption of complete public access consistent with the conduct of governmental business. The denial of public access generally is contrary to public interest and only in an exceptional case may access be denied.". . .

> [T]his public policy statement must apply . . . with utmost vigor to the situation at hand where the information sought concerns the police exercise of its most extreme power, the use of deadly force. . ..

We conclude, therefore, that under the facts of this case, the public policy favoring the right of inspection of public records and documents is not outweighed by any privacy/reputational concerns. We do accept the City's argument, however, that police officers have a right to keep their home addresses private. Accordingly, any forms containing an officer's home address should have the address redacted before disclosure.

We also reject the City's claim that the records should not be disclosed because disclosure would give the requestor greater access to the records than is available to the employee. This argument is circular. If the records are available to a requestor under the open records law, then the employee is also entitled to inspect the records. Once the records are made public, it makes no difference who the requestor is.

The City next claims that disclosing this information would make it more difficult to attract and retain competent police officers. We reject this argument as well. As noted by Journal/Sentinel, Inc., the City fails to support this argument with any facts nor does it demonstrate how this eventually would occur. Regardless, we conclude that the likelihood of such a result is remote—too remote to overcome the policy favoring disclosure of public records. Police officers must necessarily expect close public scrutiny, especially with respect to incidents involving discharge of weapons or use of deadly force.[5] Accordingly, it is difficult to ascertain a situation where qualified individuals would choose not to work as police officers merely because the public has the right to inspect the factual information related to deadly force incidents. This concern is insufficient to override the strong public interest in disclosure of the factual reports at issue.

---

[5] We note that other situations have received similar treatment: personal injury lawsuits, 1983 civil rights claims, and coroner's inquests. *See Tyner v. City of Jackson*, 105 F.R.D. 564 (S.D. Miss. 1985); *Diamond v. City of Mobile*, 86 F.R.D. 324 (S.D. Ala. 1978); *Wood v. Breier*, 54 F.R.D. 7 (E.D. Wis. 1972).

The City next claims that disclosing the requested reports will discourage victims and witnesses from providing information. Again, we disagree. There is no evidence to support this assertion. Moreover, in those situations where victims/witnesses request that their statements be kept in strict confidence, confidentiality can be maintained. The trial court's writ already contains such a provision for redacting statements made in confidence and Journal/Sentinel, Inc. accedes that the public is not entitled to this information. Therefore, we conclude that this concern is insufficient to outweigh the public's compelling interest in accessing the records. Any confidentiality issues can be carefully determined, as needed, by a document-by-document *in camera* inspection.

In reviewing each of the City's proposed countervailing interests, we are not persuaded that they justify a blanket withholding of the records at issue. The records sought in this case involve records of the police exercise of its most extreme power, the use of deadly force. The public has a particularly strong interest in monitoring a police department's overall use of deadly force.

Having applied the balancing test by addressing all of the City's concerns regarding withholding the records, we conclude that the public's particularly strong interest in accessing the majority of this information is not outweighed by any of the concerns set forth by the City. We do, however, conclude that certain portions of the records may be withheld because the countervailing interests raised by the City do outweigh the public's right to access a certain portion of the documents.

██

As noted, the public is entitled to inspection of all the factual information regarding the use of deadly force. We interpret this information to include: (1) who discharged a weapon; (2) when it was discharged; (3) the general circumstances surrounding the incident; and (4) the name and identifying information of any victims or witnesses, provided the individuals have not requested confidentiality.

██

We conclude, however, that the public is not entitled to inspect those portions of the reports containing supervisory statements regarding conclusions, recommendations or other comments regarding potential or actual disciplinary actions. We also conclude that officers' home addresses should not be subject to disclosure. These items must be redacted because the privacy concerns attached to such outweigh the public's right to access this limited information.

## III. CONCLUSION

In sum, we hold that the trial court's order is affirmed, subject to the following modifications: police officers' home addresses should be redacted from the forms and any supervisory conclusions, recommendations or other comments regarding disciplinary action should also be redacted from the forms prior to disclosure.

*By the Court.*—Order affirmed in part and modified in part.